IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARCIE ONDRASIK, f/k/a<br>MARCIE REIMER, | : | No. 3:22cv2019 |
| Plaintiff | : | (Judge Munley) |
| v. | : | |
| PALMERTON COMMUNITY<br>AMBULANCE; TOM CORREA, SR.;<br>and JOHN DOE, | : | |
| Defendants | : | |

## MEMORANDUM

Before the court for disposition is the defendants' motion to dismiss Plaintiff Marcie Ondrasik f/k/a Marcie Reimer's amended complaint which alleges employment discrimination. The parties have briefed their respective positions, and the matter is ripe for disposition.

**Background**[1]

Since March 2013, Defendant Palmerton Community Ambulance ("PMC") has employed plaintiff as an Emergency Medical Technician ("EMT"). (Doc. 9, Am. Compl. ¶ 12). Plaintiff filed a charge of sexual harassment against PMC

---

[1] These brief background facts are derived from plaintiff's amended complaint. (Doc. 9). At this stage of the proceedings, the court must accept all factual allegations plaintiff has pled in the amended complaint as true. Phillips v. Cnty. of Allegheny, 515 F. 3d 224, 233 (3d Cir. 2008). The court makes no determination, however, as to the ultimate veracity of these assertions.

with the Equal Employment Opportunity Commission ("EEOC") on May 31, 2021. (Id. ¶ 13). On November 4, 2021, the EEOC issued a Right to Sue Letter, and on November 4, 2021, plaintiff filed a discrimination complaint against PMC in federal district court. (Id. ¶¶ 14-15). This initial case settled on August 3, 2022, and plaintiff's counsel received the settlement proceeds on September 1, 2022. (Id. ¶¶ 16-17).

Seventeen days later, on September 18, 2022, plaintiff was at work at PMC's principal place of business. (Id. ¶ 18). PMC's building is a secure facility which can only be accessed by its employees. (Id. ¶ 19). It provides sleeping quarters for its nightshift employees. (Id. ¶ 18). Plaintiff entered the sleeping quarters which were designated for the female employees and proceeded to the bed that she utilized. (Id. ¶¶ 20-23). She laid down on the bed and felt that the sheets, blanket, and mattress were wet. (Id. ¶¶ 25-26). The wetness penetrated her clothing. (Id. ¶ 26). Plaintiff further examined the bed and observed that the sheets, blanket and mattress were wet, stained yellow and strongly smelled of urine. (Id. ¶ 27). Thus it appeared someone had urinated on plaintiff's bed. None of the other beds, either those utilized by women or men, were urinated upon. (Id. ¶¶ 30-31).

Because of the secure nature of the building, only another PMC employee could have urinated on plaintiff's bed. (Id. ¶ 32). Plaintiff believes that the culprit is Defendant Tom Correa, Sr., the president of the company. (Id. ¶¶ 3, 33).

Further, since September 1, 2022, Defendant Correa has falsely advised plaintiff that PMC was changing its employment policy, which would result in an unmanageable change to plaintiff's schedule. (Id. ¶ 33(f)). He told her this fabrication to entice her to quit her employment. (Id.) Plaintiff's direct supervisor, Scott Wuttke, has attempted to ostracize plaintiff from her coworkers by falsely telling most, if not all of them, that plaintiff intended to sue everyone working for PMC and that they should "watch their back." (Id. ¶ 34). As a result, plaintiff's coworkers have ostracized her and avoided speaking or otherwise interacting with her. (Id. ¶ 35).

Based upon these factual allegations, the plaintiff initiated the instant lawsuit. The amended complaint asserts the following five (5) causes of action:[2] Count I -Violation of Title VII of the Civil Rights Act of 1964 ("Title VII"): Retaliation Hostile Work Environment against PMC; Count II – Violation of Title VII: Discrimination/Hostile Work Environment against PMC; Count IV – Negligent Supervision and Retention against PMC; Count V – Assault and Battery against

---

[2] The complaint advances five causes of action, but they are labelled Count I, II, IV, V, and VI. For purposes of clarity, the court will retain the numbering from plaintiff's amended complaint although it is missing a Count III.

3

Defendant Tom Correa, Sr.; and Count VI – Assault and Battery against John Doe.

Plaintiff filed her complaint in this case on December 20, 2022. (Doc. 1). Defendants moved to dismiss the complaint on February 21, 2023.[3] In response, plaintiff filed an amended complaint on March 20, 2023, the operative pleading here. (Doc. 9). Defendants in turn filed a motion to dismiss the amended complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and for lack of subject matter jurisdiction under Rule 12(b)(1). (Doc. 13). The parties have briefed their positions, bringing the case to its present posture.

**Jurisdiction**

As plaintiff brings Counts I and II pursuant to Title VII, the court has federal question jurisdiction. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over the plaintiff's state law claims found in Counts IV, V, and VI, pursuant to 28 U.S.C. § 1367.[4]

---

[3] This motion to dismiss will be denied as moot because plaintiff has filed the amended complaint at issue here.
[4] Defendants challenge the court's supplemental jurisdiction, and this subject will be discussed more fully below.

4

**Legal Standard**

Defendants filed their motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion. All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, "'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'" Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)). The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation." Id. at 234-35. In evaluating the sufficiency of a complaint the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir.

1994) (citations omitted). The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

The federal rules require only that plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief," a standard which "does not require detailed factual allegations," but a plaintiff must make "a showing, rather than a blanket assertion, of entitlement to relief that rises above the speculative level." McTernan v. N.Y.C., 564 F.3d 636, 646 (3d Cir. 2009) (citations and internal quotations and quotation marks omitted). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Such "facial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[T]he factual detail in a complaint [cannot be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." Phillips, 515 F.3d at 232 (citation omitted). "Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the

elements of a cause of action will not do.'" DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (quoting Twombly, 550 U.S. at 555).

The Supreme Court has counseled that a court examining a motion to dismiss should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Next, the court should make a context-specific inquiry into the "factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." Id. at 681.

## Discussion

Defendants motion seeks dismissal of all the counts in plaintiff's amended complaint. The court will address each separately.

### I. Count I - Retaliation Hostile Work Environment

Count I of plaintiff's amended complaint asserts a cause of action for a violation of Title VII: Retaliatory Hostile Work Environment. (Doc. 9, ¶¶ 38-47). Plaintiff alleges that Defendant PMC encouraged, or engaged in, the act of urinating on her bed in retaliation for the sexual harassment complaint/lawsuit she had filed and ultimately settled. (Id. ¶ 40). Further, she alleges that defendant provided her with false information to induce her to quit her employment and provided false information to her co-workers to cause them to ostracize her. (Id. ¶¶ 41-42). Defendant argues that plaintiff's retaliation claim

should be dismissed because it involves mere speculation about a single event, i.e. the urination on her bed. The court disagrees.

Title VII provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment action by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

To establish a Title VII retaliation claim plaintiff must demonstrate:

1) she engaged in activity protected by Title VII;

2) her employer took an adverse employment action against her; and

3) a causal connection exists between her participation in the protected activity and the adverse employment action.

Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006).

Here, plaintiff has alleged that she engaged in a protected activity, that is her initial complaint/lawsuit regarding sexual harassment. In the instant case, despite defendants' argument to the contrary, plaintiff alleges more than one allegedly discriminatory event. The complaint asserts that several weeks after the settlement proceeds of that case were disbursed, the following adverse actions were taken:

1. The bed was urinated upon;

8

    2. Defendant Correa, the company president, falsely told plaintiff about a scheduling change that would be unmanageable for her;

    3. Plaintiff's direct supervisor acted to ostracize her from her co-workers; and

    4. Plaintiff's co-workers did ostracize her.

(Doc. 9, Am. Compl.).

The final factor to consider is whether a causal connection exists between plaintiff's lawsuit/settlement of the lawsuit and the adverse employment action. The law provides: "To demonstrate a causal connection, a plaintiff generally must establish 'either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism, coupled with timing[,] to establish a causal link.' " Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 258 (3d Cir. 2014) (quoting Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007)); see also Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 196 (3d Cir. 2015) (noting that causation may be established by suggestive timing or other circumstantial evidence that supports the inference of retaliation). "Whether a causal link exists 'must be considered with a careful eye to the specific facts and circumstances encountered.' " Id. (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 n.5 (3d Cir. 2000)).

The defendants' alleged conduct may be causally connected to plaintiff's prior lawsuit due to the suggestive timing – seventeen days after the settlement of the initial lawsuit was finalized. Moreover, some of the comments made about her involved a fear that she would sue other people working there. (Doc. 9, Am. Compl. ¶ 34). Therefore, it can be inferred defendant sought to retaliate against plaintiff for her initial lawsuit. Accordingly, for purposes of a motion to dismiss, plaintiff has sufficiently pled her Title VII retaliation claim, and defendant's motion to dismiss this claim will be denied.

## II. Count II - Violation of Title VII of the Civil Rights Act of 1964: Discrimination/Hostile Work Environment against PMC

Count II of plaintiff's complaint alleges discrimination/hostile work environment against Defendant PMC in violation of Title VII. Defendant seeks dismissal of this count on the basis that plaintiff's claim is founded on one incident, the urine on the bed. Defendant posits that this incident cannot be tied to plaintiff's sex so as to establish sex discrimination, and as such, plaintiff has not properly alleged a sex discrimination claim. After a careful review, the court disagrees with defendants and Count II will not be dismissed.

Plaintiff refers to this count as a "disparate treatment" claim. (Doc. 15, Pl.'s Br. at 12). Title VII provides that "[i]t shall be unlawful employment practice for an employer ... to discriminate against any individual with respect to his

10

compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e–2(a)(1).  Thus, to pursue a claim for sex discrimination under Title VII, a plaintiff must demonstrate that sex was a substantial factor in the alleged harassment and that if she were a male, she would not have been treated in the same manner. Andrews v. City of Philadelphia, 895 F.2d 1469, 1485 (3d Cir.1990) (superseded by statute).

> The United States Supreme Court has explained as follows:
>
> Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at "*discriminat[ion]* ... because of ... sex." We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations. The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.

Oncale v. Sundowner Offshore Svcs., Inc., 523 U.S. 75, 80 (1998) (emphasis in original) (internal quotation marks and citations omitted).

Defendant again argues that plaintiff has pled only one instance of a single act by an unknown person which cannot under the law amount to sex discrimination.  The plaintiff, however, points out that more than one instance is alleged.  She alleges:  1) the bed incident; 2) lies from the president of the company to induce her to quit; and 3) lies from her direct supervisor to ostracize

her from her co-workers. No such actions were taken against the men at the workplace. (Doc. 9, Am. Comp. ¶¶ 52-54). Further, Plaintiff alleges that Defendant Correa had a history of sexual hostility against women and inappropriate conduct evidenced by, *inter alia*, sharing sexually charged social media posts, tolerating and failing to discipline employees who used sexually charged language in the workplace. (Doc. 9, Am. Compl. ¶ 33e). These allegations are sufficient to support plaintiffs disparate sex discrimination claim for the purposes of overcoming a motion to dismiss. Accordingly, the defendants' motion to dismiss Count II will be denied.

### III. Count IV

Defendants also challenge Count IV of plaintiff's amended complaint which asserts a state law cause of action against PCA for negligent supervision and retention. Specifically, Count IV alleges that Defendant PCA had a duty: 1) to ensure its employees did not have the propensity to excrete their bodily fluids on its employees' beds; 2) to protect is employees from being assaulted and/or battered by bodily fluids from its employees; and 3) to ensure that its premises were safe and adequately staffed and supervised so as not to allow for excretion of bodily fluids in such a manner. (Doc. 9, Am. Comp. ¶¶ 62-64). Further the amended complaint alleges that Defendant PCA breached this duty and harmed plaintiff. (Id. ¶¶ 65, 69).

Defendant argues that plaintiff's claim is based upon speculation and conjecture and the allegations are not sufficient to establish a duty and breach thereof. Defendant further argues that plaintiff does not allege a physical injury but merely some emotional distress without injury or impact and that the claim should be dismissed. The court disagrees.

Under Pennsylvania law, "[n]egligent supervision requires the four elements of common law negligence, *i.e.*, duty, breach, causation and damages." Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 488 (3d Cir. 2013). To recover under Pennsylvania law for the tort of "negligent supervision," plaintiff must further establish that her injuries resulted from "(1) a failure to exercise ordinary care to prevent an intentional harm by an employee acting outside the scope of his employment; (2) that is committed on the employer's premises, (3) when the employer knows or has reason to know of the necessity and ability to control the employee." Id. The elements are similar for a negligent retention claim, with the main issue for the court to resolve in a negligent retention claim being whether "the employer knew, or in the exercise of ordinary care, should have known of the necessity for exercising control over his employee." Schofield v. Trustees of Univ. of Pennsylvania, 894 F. Supp. 194, 196 (E.D. Pa. 1995) (quoting Dempsey v. Walso Bur., Inc., 246 A.2d 418, 422 (Pa. 1968)).

Defendants argue that the conduct plaintiff alleges is based upon speculation and conjecture and insufficient to establish a duty and breach thereof. Moreover, plaintiff alleges no physical injury according to the defendants. First, the court notes that defendants have cited to no law, and our research has uncovered none, which requires physical harm to the plaintiff to recover under Count IV. Moreover, as explained more fully in the next section, plaintiff has alleged sufficient facts to support her "speculation" that Defendant Correa is the individual who urinated on her bed. Thus, it would be inappropriate to dismiss this claim at this point in the case without allowing discovery on these issues.

### IV. Count V – Assault and Battery

Count V of plaintiff's complaint asserts a state law assault and battery claim against Defendant Correa based upon the urine on the bed. (Doc. 9, Am. Compl. ¶¶ 72-75). Defendants move to dismiss this count. They argue that it is based on mere speculation that Defendant Correa urinated on the bed.

Under Pennsylvania law, the tort of assault occurs when the defendant acts with the intent to place the plaintiff in apprehension of imminent harmful or offensive bodily contact and that the plaintiff actually experience such apprehension. D'Errico v. DeFazio, 763 A.2d 424, 431 n.2 (Pa. Super. Ct. 2000).

A battery occurs when an individual intentionally causes a harmful or offensive contact with another person's body. C.C.H. v. Phila. Phillies, Inc., 940 A.2d 336, 340 n.4 (Pa. 2000).

The parties do not dispute the elements of these two torts. Rather Defendant Correa argues that the plaintiff merely speculates that he urinated on the bed. It is without question that plaintiff is unsure as to the identity of the culprit of the bed urination. The complaint, however, sets forth her reasons for suspecting that it is Defendant Correa:

Correa installed numerous security cameras at the PCA. The cameras should have been able to capture the image of the individual who urinated on plaintiff's bed. Defendant Correa was the sole individual with access to the live and/or recorded security camera footage. Despite this, Defendant Correa has never identified who the individual was and has never disciplined anyone for the misconduct. (Doc. 9, Am. Compl. ¶ 33).

These assertions are sufficient, prior to discovery, for plaintiff's assault and battery claim to overcome defendant's motion to dismiss. Discovery may elucidate the issue as to the identity of the urinator and either confirm or refute that allegation that it was Defendant Correa. Accordingly, the motion to dismiss Count V will be denied.

## V. Motion To Dismiss under Rule 12(b)(1)

Finally, the defendants move to dismiss Defendant Correa from this case completely. They assert that he is only a defendant under the state law claims in Count V, and no federal claims are asserted against him. Because no federal causes of action are asserted against him, defendants argue that the court does not have jurisdiction over him. After a careful review, the court disagrees.

Rule 12(b)(1) provides that the court may dismiss an action for lack of subject-matter jurisdiction. Here, the court does in fact have jurisdiction based upon statutory supplemental jurisdiction.

The law provides that:

> Except as provided in subsections (b) [involving diversity jurisdiction] and (c) [involving when the court can decline to exercise supplemental jurisdiction] or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).

In other words, where state-law claims share a "common nucleus of operative fact" with the claims that provided the district court's original jurisdiction, a district court may exercise supplemental jurisdiction over the state-law claims. De Asenio v. Tyson Foods, Inc., 342 F.3d 301, 308 (3d Cir. 2003)

16

(citing United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)). Contrariwise, section 1367 "does not permit courts to take jurisdiction over tangentially related claims. The issue is whether there is a 'common nucleus of operative fact' and whether the claims are part of the 'same case or controversy[.]" In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 303 (3d Cir. 1998).

Here, the actions which comprise the assault and battery claim, i.e. the urination on plaintiff's bed, are part and parcel of plaintiff's federal employment discrimination claims, that is, defendants retaliated against her for previously alleging discrimination against them. One of the retaliatory actions alleged in the complaint is the urination on the bed. The two claims share a common nucleus of operative facts and are so related as to form part of the same case or controversy. Thus, supplemental jurisdiction over the assault and battery claim against Defendant Correa is appropriate.

**Conclusion**

For the reasons set forth above, the defendants' motion to dismiss will be denied. An appropriate order follows.

Date: 5/30/24

JUDGE JULIA K. MUNLEY
United States District Court

17